11-1124-00-4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRIENDSHIP VILLAGE OF MILL CREEK, NFP D/B/A GREENFIELDS OF GENEVA, AN ILLINOIS NOT-FOR-PROFIT CORPORATION, ) ) ) ) ) ) Plaintiff, ) ) vs. ) ) PHILADELPHIA INDEMNITY INSURANCE COMPANY, ) ) ) Defendant. ) | CASE NO.: 1:14-CV-01593 JUDGE JOHN A. NORDBERG MAGISTRATE JUDGE MICHAEL T. MASON |

## DEFENDANT PHILADELPHIA'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT

Defendant, Philadelphia Indemnity Insurance Company ("Philadelphia"), by and through its attorneys, Clausen Miller P.C., for its Answer to the Complaint of Plaintiff, Friendship Village of Mill Creek, NFP d/b/a Greenfields of Geneva ("Friendship"), states as follows:

## NATURE OF THE CLAIM

1. This is an action for declaratory judgment pursuant to 735 ILCS 5/2-701 seeking a determination of the rights and obligations of the parties in connection with an insurance policy that Philadelphia issued to Greenfields.

**ANSWER:** **The allegations in Paragraph 1 are legal conclusions to which no response is required; however, Philadelphia admits that, in this action, Friendship is seeking a declaration of rights and obligations under a policy of insurance issued by Philadelphia to Friendship.**

1483141.1

2.      Specifically, Greenfields seeks a declaration from this Court that Philadelphia has a duty, under the terms of the insurance policy that it issued to Greenfields and related endorsements, to provide coverage to Greenfields for losses suffered and expenses incurred as a result of damage to Greenfield's continuing care retirement community in Geneva, Illinois (hereinafter the "Project").

**ANSWER:     The allegations in Paragraph 2 are legal conclusions to which no response is required; however, Philadelphia admits that Friendship is seeking a declaration of coverage under a policy of insurance issued by Philadelphia to Friendship.**

## THE PARTIES

3.      Greenfields is an Illinois not-for-profit corporation that owns and operates a continuing care retirement community located at ON801 Friendship Way in Geneva, Illinois. Greenfields is the insured on a policy issued by Philadelphia.

**ANSWER:     Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3.**

4.      Upon information and belief, Philadelphia is an insurance company formed under Pennsylvania law, and which is licensed to and which does transact insurance business in the State of Illinois, County of Kane and elsewhere.

**ANSWER:     Philadelphia admits the allegations contained in Paragraph 4.**

2

## JURISDICTION AND VENUE

5.     This Court is vested with jurisdiction over this matter and the parties, as all of the parties hereto have conducted business in Illinois and/or have their principal places of business in Illinois.

**ANSWER:     The allegations of Paragraph 5 are legal conclusion to which no response is required; however, Philadelphia states that this action has been properly removed to this United States District Court where diversity jurisdiction exists.**

6.     All parties who have or claim to have any interest in this matter in controversy or would be affected by any declaration made by this Court have been made parties to this action.

**ANSWER:     Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6.**

7.     An actual controversy exists between the parties to this proceeding.

**ANSWER:     Philadelphia admits the allegations contained in Paragraph 7.**

8.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101, as all of the parties hereto conduct business or reside within Kane County.

**ANSWER:     The allegations of Paragraph 8 are legal conclusions to which no response is required; however, Philadelphia states that this action has been properly moved to this United States District Court where venue is proper.**

## THE INSURANCE POLICY

9.     Philadelphia issued its policy of insurance numbered PHPK616084 to Greenfields as named insured and Bovis Lend Lease ("Lend Lease"), the general contractor of the Project, as

3

1483141.1

an additional named insured.  The effective policy period was September 1, 2010 to March 31, 2012. A true and correct copy of the Philadelphia policy of insurance ("Policy") is attached hereto as **Exhibit A** and is incorporated in full herein.

**ANSWER:** **Philadelphia admits that Policy No. PHPK616084, a Builder's Risk policy, was issued to Friendship and that Bovis Lend Lease, Inc. ("Lend Lease"), as the general contractor for the construction of the retirement community project, was an additional named insured.  Philadelphia admits the remaining allegations of Paragraph 9.**

10.     In relevant part, the Policy provides Builder's Risk Coverage to Greenfields "for direct physical 'loss' to Covered Property caused by or resulting from any of the Covered Causes of Loss."  A true and correct copy of the Builder's Risk Coverage Form is attached hereto as **Exhibit B** and is incorporated in full herein.

**ANSWER:** **Philadelphia admits that the Policy provided Builder's Risk Coverage for the construction of the retirement community project known as Greenfields of Geneva and that Friendship has quoted part of a sentence from the "Builder's Risk Coverage Form"; however, Philadelphia states that, at all times, the Policy was subject to its terms, conditions, provisions, rights, definitions, limitations, exclusions, endorsements, and defenses.  Philadelphia admits that the "Builder's Risk Coverage Form" was attached as Exhibit B.**

11.     The Philadelphia Policy issued to Greenfields also contains an endorsement for Extra Expenses and Rental Income ("Endorsement") which is set forth, in pertinent part, as follows:

4

1483141.1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. EXTRA EXPENSES AND RENTAL INCOME ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**Builder's Risk Coverage Form**
**Limits of Insurance**

Combined for all Extra Expenses indicated
below with an X                                                    $5,000,000

Rental Income                                                      $2,900,000

1. Coverage

a.      **Extra Expenses**

When a Limit of Insurance is shown above for Extra Expenses, we will cover those extra expense items indicated below with an **X**.

[X] Construction loan interest in financing under the Construction Loan Agreement.

[X] Real estate and property taxes on the construction at the project site.

[X] Architect, engineering and consultant fees.

[X] Legal and accounting fees.

[X] Insurance premium for the Builder's Risk Coverage Form.

[X]  Advertising and promotional expenses.

We will pay such necessary Extra Expenses you incur as the result of the project being delayed beyond the "**scheduled date of completion**." The delay must be directly caused by any of the Covered Causes of Loss under the Builder's Risk Coverage Form.

Coverage is for those Extra Expenses incurred:

(1)  During the period of time between the "**scheduled date of completion**" and the actual date the project is completed with reasonable speed and similar quality; and

(2)  That are over and above what would have been incurred had there been no "loss."

5

1483141.1

b.     **Rental Income**

When a Limit of Insurance is shown above for "rental income," we will pay the actual loss of "rental income" sustained by you as a result of the project being delayed beyond the "**scheduled date of completion**." The delay must be directly caused by any of the Covered Causes of Loss under the Builder's Risk Coverage Form.

Coverage is for your actual loss of "rental income" incurred during the period of time between the "**scheduled date of completion**" and the actual date the project is completed with reasonable speed and similar quality.

A true and correct copy of the Endorsement is attached hereto as **Exhibit C** and incorporated in full herein.

<u>**ANSWER:**</u>    **Philadelphia admits that the Policy contained an Endorsement entitled "Extra Expenses and Rental Income Endorsement" and that Friendship has quoted a portion of that Endorsement in Paragraph 11. Philadelphia states that, at all times, the Policy was subject to its terms, conditions, provisions, rights, definitions, limitations, exclusions, endorsements, and defenses. Philadelphia admits that a copy of the "Extra Expenses and Rental Income Endorsement" was attached as Exhibit C.**

<u>**BACKGROUND FACTS**</u>

**THE PROJECT**

12. On June 9, 2010, Greenfields as owner, and Lend Lease, as general contractor, entered into an agreement for the construction of the Project. The scheduled date for receipt of a Certificate of Occupancy for the independent living neighborhood of the Project was October 3, 2011. The planned occupancy of the independent living neighborhood of the Project was scheduled for October 31, 2011, with notices having been sent to future residents who had signed Reservation Agreements and provided deposits on or about August 31, 2011.

6

1483141.1

**ANSWER:** **Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.**

13. On September 9, 2011, in a final walk through prior to the issuance of a Certificate of Occupancy, the architect discovered water trapped by a non-specified vapor barrier in the wall system in the independent living neighborhood of the Project (the "Occurrence").

**ANSWER:** **Philadelphia admits that water or moisture was found in the wall cavities of certain units, and the water or moisture build-up was caused by an improper vapor barrier installed by Lend Lease during construction. Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 13.**

14. As a result of this water in the wall system and resulting damage, Lend Lease and Greenfields were required to undertake a number of remedial steps to correct the physical damage caused to the Project.

**ANSWER:** **Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14.**

15. The construction required to remediate the damages caused by the water trapped in the wall system also resulted in substantial delays to the date of completion and occupancy of the independent living neighborhood of the Project. The repair of certain of the damage caused by the Occurrence was not completed, nor could have been completed, to certain areas of the independent living neighborhood until January 20, 2012; at which time a Certificate of Occupancy for that portion of the independent living neighborhood was issued by the Kane County Development Department, Building & Zoning Division. Occupancy of those areas of the

7

1483141.1

independent living neighborhood began on January 31, 2012, and a true and correct copy of the January 20, 2012 Certificate of Occupancy is attached hereto as **Exhibit D**.

**ANSWER:** **Philadelphia admits that the construction project was delayed, in part, because of water or moisture that built up in the wall cavities of certain units, which was caused by an improper vapor barrier installed by Lend Lease during construction. Philadelphia denies that all of the delay was the result of damage to property caused by the water and also denies that the repairs could not have been completed sooner. Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15.**

16. The repair to the remainder of the independent living neighborhood was not completed, nor could it have been completed, until February 6, 2012, at which time a Certificate of Occupancy was issued for the remaining areas of the independent living neighborhood. A true and correct copy of the February 6, 2012 Certificate of Occupancy is attached hereto as **Exhibit E**. Occupancy of these areas of the independent living neighborhood of the Project began on February 12, 2012.

**ANSWER:** **Philadelphia denies that the repairs could not have been completed sooner; however, Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16.**

16. [sic] As a result of the delayed completion of the independent living neighborhood of the Project, which was caused directly by the Occurrence, Greenfields was forced to expend substantial monies including, for example, replacing rental income lost and

8

1483141.1

reducing rental income losses caused by tenants' inability to timely move into the independent living neighborhood, paying additional amounts in construction loan interest as a result of the delayed opening, engaging architects, engineers, and consultants and paying advertising and promotional expenses beyond what would have been required had the independent living neighborhood of the Project not been delayed.

**ANSWER:** **Philadelphia denies that the delay in the completion of the independent living portion of the project was entirely caused by the water damage. Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 16 [sic].**

**PHILADELPHIA PROVIDES COVERAGE TO LEND LEASE**

17. On September 28, 2011, Lend Lease submitted a loss notice to Philadelphia seeking coverage under the Policy for damage to the construction arising out of the water problem.

**ANSWER:** **Philadelphia admits that it received a Property Loss Notice, dated September 28, 2011, from Lend Lease seeking coverage under the Policy for damage described as: "Discovered a water intrusion problem at the construction project known as Geneva of Greenfields located in Geneva, Illinois. As a result of the intrusion, there has been damage to the construction."**

18. On November 10, 2011, Philadelphia denied coverage to Lend Lease, asserting the applicability of the "water restriction" and "faulty workmanship" exclusions and denying coverage on the basis that "a Covered Cause of Loss has not occurred."

1483141.1

**ANSWER:** **Philadelphia admits that, in a letter to Friendship dated November 10, 2011, it denied coverage of the claim, based on the Notice of Loss from Lend Lease, and cited the exclusions for "water restriction," "faulty workmanship," and "defective design," which led to the conclusion that "a Covered Cause of Loss" had not occurred.**

19. At Lend Lease's request, Philadelphia reconsidered its denial of Lend Lease's claim. On March 14, 2012, Philadelphia reversed its decision and found "that coverage is provided for the cost to repair areas of the buildings specifically damaged by moisture/water." A true and correct copy of Philadelphia's March 14, 2012 letter is attached hereto as **Exhibit F**. In other words, Philadelphia conceded that a Covered Cause of Loss under the Policy had occurred.

**ANSWER:** **Philadelphia admits, at Lend Lease's request, it reconsidered its denial of claim and that, in a letter dated March 14, 2012, Philadelphia acknowledged coverage to Lend Lease for the cost to repair areas of the building specifically damaged by moisture/water, but Philadelphia continued to maintain that other aspects of the claim were not covered, as specifically set forth in its March 14, 2012 letter. Philadelphia admits that a copy of its March 14, 2012 letter was attached as Exhibit F. Philadelphia admits that the physical damage from the moisture/water damage was a "resulting loss" by a Covered Cause of Loss, which was separate from the damage caused by the faulty, inadequate, or defective vapor barrier.**

10

1483141.1

**PHILADELPHIA PARTIALLY DENIES GREENFIELD'S CLAIM**

20. Subsequent to the claim by Lend Lease, Greenfields submitted a claim to Philadelphia under the Endorsement (hereinafter "Greenfields Claim").

**ANSWER:** **Philadelphia admits the allegations contained in Paragraph 20.**

21. The Greenfields Claim is based on the same Covered Cause of Loss as the Lend Lease claim and the parties do not dispute that the relevant portions of the Occurrence constitute a "Covered Cause of Loss" within the meaning of the Policy and Endorsement.

**ANSWER:** **Philadelphia denies the allegations contained in Paragraph 21.**

22. The Greenfields Claim presently seeks coverage for over $3 million in expenses incurred and losses suffered (hereinafter the "Covered Expenses and Losses") as a result of the Occurrence.

**ANSWER:** **Philadelphia admits that Friendship is seeking coverage for over $3 million in its claim under the Extra Expenses and Rental Income Endorsement of the Policy; however, Philadelphia denies that all of the claimed expenses and losses are covered or that they resulted from a Covered Cause of Loss.**

23. The Greenfields Claim is based on the expenses incurred and losses suffered by Greenfields from the time between the scheduled date of completion of October 31, 2011 and which is evidenced by the scheduled issuance of an Occupancy Permit and actual occupancy of the independent living neighborhood of the Project, and the actual date a Certificate of Occupancy was issued for the independent living neighborhood and, actual occupancy, February 20, 2012. The Covered Expenses and Losses were caused directly by the Covered Cause of Loss and would not have been incurred or suffered in the absence of the Covered Cause

11

1483141.1

of Loss. The damage caused by the Covered Cause of Loss was completed by Lend Lease with reasonable speed consistent with the requirements of inspecting City and County agencies.

**ANSWER: Philadelphia is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 23. Philadelphia denies the remaining allegations in Paragraph 23.**

24. On January 31, 2014, Philadelphia provided a written response to the Greenfields Claim (hereinafter "Partial Coverage Determination"). In that response, Philadelphia asserted its belief that the Project could have been completed on December 3, 2011 and, apparently, that Greenfields was not entitled to coverage beyond that date.

**ANSWER: Philadelphia admits that, in a letter dated January 31, 2014, it provided a written response to Friendship with regard to its claim. Philadelphia further states that the letter speaks for itself and attaches a true and correct copy of its January 31, 2014 letter as Exhibit 1. Philadelphia further admits that the period of delay, based on its construction consultant's analysis, should have ended on December 3, 2011.**

25. Philadelphia's Partial Coverage Determination also asserted that no coverage was afforded under the Policy for Greenfield's claim for construction loan interest because the construction loan interest was not an "Extra Expense" under the Policy.

**ANSWER: Philadelphia admits that, in its letter of January 31, 2014, it determined that Friendship's claim for construction loan interest was not covered as an Extra Expense under the Policy for the reasons stated in the letter. (See Exhibit 1, pp. 3-4.)**

12

1483141.1

26.     To date, Philadelphia has failed to make a coverage determination with respect to the entirety of the remaining Covered Expenses and Losses.

**ANSWER:     Philadelphia admits that, for the reasons stated in its January 31, 2014 letter (Exhibit 1), including that it needs more information from Friendship, Philadelphia has not made a coverage determination on all aspects of Friendship's claim.  Philadelphia's position on the aspects of Friendship's claim, for which it has been able to make a determination, was set forth in the January 31, 2014 letter, and Philadelphia states that, to date, it has offered to pay Friendship $166,232.01 and $166,580, but Friendship has not accepted those amounts.**

## COUNT I
### (Declaratory Judgment)

27.     Greenfields restates and realleges ¶¶1-26 as if fully restated herein.

**ANSWER:     Philadelphia repeats and realleges Paragraphs 1 through 26 above as though fully set forth as Paragraphs 1 through 26 in Count I.**

28.     Greenfields is a named insured under the Policy and Endorsement issued by Philadelphia.

**ANSWER:     Philadelphia admits that Friendship was a named insured under the Policy.**

29.     Greenfields contends that it is entitled to coverage for the Covered Expenses and Losses under the Endorsement to the Policy because the Covered Expenses and Losses:

(a)     Were incurred as a result of the independent living neighborhood of the Project being delayed beyond the scheduled date of completion, as evidenced by the issuance of an Occupancy Permit, and occupancy and were caused directly by the Covered Cause of Loss;

13

1483141.1

(b)    Were incurred during the time between the scheduled date of completion, as evidenced by the issuance of an Occupancy Permit and occupancy, October 31, 2011, and the actual date the independent living neighborhood of the Project was completed as evidenced by the Occupancy Permit attached hereto as **Exhibit E** with reasonable speed and similar quality; and,

(c)    Would not have been incurred in the absence of the Covered Cause of Loss.

**ANSWER:** **Philadelphia admits that Friendship "contends" that it is entitled to coverage for expenses and losses under the Endorsement to the Policy; Philadelphia denies the remaining allegations in Paragraph 29.**

30.    The above contentions of Greenfields are, on information and belief, denied by Philadelphia, at least in large part, on the basis that it is not obligated to provide coverage for the Covered Expenses and Losses after December 3, 2011, and the construction loan interest was not an "Extra Expense." To date, Philadelphia has made no coverage determination with respect to the majority of the remaining portions of the Covered Expenses and Losses.

**ANSWER:** **Philadelphia admits that, as stated in its letter of January 31, 2014 (Exhibit 1), the period of delay should have ended on December 3, 2011, and that there is no coverage under the Endorsement for "Construction Loan Interest" as claimed by Friendship. Philadelphia further states that, in the January 31, 2014 letter, it points out the aspects to the claim for which it has not been able to make a coverage determination and the information it still needs from Friendship to make a coverage determination. Philadelphia also states that, to date, it has offered to pay Friendship $166,232.01 and $166,580, but Friendship has not accepted those amounts.**

14

31.     Under the terms of the Endorsement and Policy, Philadelphia has an obligation to provide coverage to Greenfields for the entirety of the Covered Expenses and Losses on the grounds that the Endorsement and Policy provide coverage for the Covered Expenses and Losses.

**ANSWER:     Philadelphia denies the allegations in Paragraph 31.**

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1.     In the construction of the building, a faulty, inadequate, or defective vapor barrier was installed in certain areas which caused moisture to build up in the wall cavities of certain residential units.

2.     The Policy, in part, provided:

**b.     Exclusions**

\*          \*          \*

**3.**     We will not pay for "**loss**" caused by or resulting from any of the following.  But if **"loss"** by any of the Covered Causes of Loss results, we will pay for that resulting **"loss"**.

a.     Faulty, inadequate, or defective materials, or workmanship.

\*          \*          \*

(Policy, Builder's Risk Coverage Form, B. Exclusions, 3.a., p. 6 of 7.)

3.     The loss caused by the faulty, inadequate, or defective vapor barrier installed in the building was not covered, including the cost to investigate, remove, and replace the faulty, inadequate, or defective vapor barrier.

4.     Under the Extra Expenses and Rental Income Endorsement, the extra expense or lost rental income must have been incurred during the delay and the delay must have been

15

directly caused by a Covered Cause of Loss under the Builder's Risk Coverage Form. (Policy, Extra Expenses and Rental Income Endorsement, 1. Coverage, a. and b., p. 1 of 3.) The delay from the faulty, inadequate, or defective vapor barriers was not caused by a Covered Causes of Loss under the Builder's Risk Coverage Form.

5. Therefore, any expenses, damages, or loss during any alleged delay caused by the faulty, inadequate, or defective vapor barrier is not covered.

## SECOND AFFIRMATIVE DEFENSE

1. During the investigation of the claim, Philadelphia, through its adjuster and consultants, requested that Friendship produce documents and information relating to the claim.

2. Not all the documents and information requested by Philadelphia were provided by Friendship.

3. The Policy provided the following Conditions:

**LOSS CONDITIONS**

\* \* \*

**C.** **Duties In The Event Of Loss**

You must see that the following are done in the event of loss or damage to Covered Property:

\* \* \*

6. As often as may be reasonably required, permit us to . . . examine your books and records.

Also . . . permit us to make copies from your books and records.

\* \* \*

10. Cooperate with us in the investigation or settlement of the claim.

(Policy, Loss Conditions, C.6. and 10., p.1 of 3.)

16

1483141.1

4.      Friendship did not provide all the documents and information requested, and, therefore, it failed to cooperate with Philadelphia in its investigation of the claim and to otherwise satisfy the conditions of the Policy.

5.      Therefore, Friendship is barred from recovering under the Policy.

WHEREFORE, Defendant, Philadelphia Indemnity Insurance Company, prays that judgment be entered in its favor and against Plaintiff, Friendship Village of Mill Creek, NFP d/b/a Greenfields of Geneva, and that it be awarded its costs and disbursements incurred in this action.


Dated: March 12, 2014                                         Respectfully submitted,


By: */s/James R. Swinehart*
    James R. Swinehart, ARDC #6183580
    Kelly A. Jorgensen, ARDC #6278000
    CLAUSEN MILLER P.C.
    10 South LaSalle Street
    Chicago, Illinois 60603-1098
    Email:    jswinehart@clausen.com
              kjorgensen@clausen.com
    Tel:      312- 855-1010
    Fax:      312-606-7777

    *Counsel for Defendant Philadelphia*
    *Indemnity Insurance Company*


17

1483141.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2014, a copy of the foregoing

**DEFENDANT PHILADELPHIA'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ James R. Swinehart
James R. Swinehart

18

1483141.1